UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

AURORA LOAN SERVICES, LCC, F/K/A
AURORA LOAN SERVICES, INC. and
LEHMAN BROTHERS HOLDINGS, INC.,
    Plaintiffs,

v.                                                                C.A. No. 07-441-ML

DREAM HOUSE MORTGAGE
CORPORATION,
    Defendant.

## MEMORANDUM AND ORDER

This matter is before the Court on Lehman Brothers Holdings, Inc.'s ("Plaintiff"[1]) Motion for Partial Summary Judgment. For the reasons set forth below, Plaintiff's Motion for Partial Summary Judgment is GRANTED in part and DENIED in part.

### I. BACKGROUND

Plaintiff, a Delaware corporation, is the parent company of Lehman Brothers Bank ("LBB") and Aurora Loan Services Inc. ("Aurora"). Dream House Mortgage Co. ("Defendant"), a Rhode Island corporation, is a mortgage lender that originates loans and then sells those loans to investors. Plaintiff's Statement of Undisputed Facts ¶ 1. In or before 2002, Defendant began selling loans to Aurora. See Ponte Decl. ¶ 4. In 2007, Defendant had sold approximately 260 loans to Aurora. Id. ¶ 5.

---

[1] The Court granted Plaintiffs' Motion to Drop Aurora as a Plaintiff after Plaintiffs submitted this Motion. Lehman Brothers Holdings, Inc. is therefore the only remaining Plaintiff in this suit.

On December 3, 2007, Aurora alone commenced this action. The original complaint has since been amended twice. On December 28, 2007, Aurora filed its First Amended Complaint against Defendant; the amendment added claims relating to two more loans. On May 19, 2009, Aurora filed a Second Amended Complaint ("Complaint"), this time adding Lehman Brothers Holdings, Inc. as a plaintiff. The Complaint makes three claims: Breach of Contract (Count I), Unjust Enrichment (Count II), and Indemnity (Count III). Plaintiff now moves for partial summary judgment on its breach of contract and indemnification claims with respect to seventeen of the twenty-one loans referenced in the Complaint.[2]

Plaintiff contends that Defendant breached their contract in two distinct ways. First, Plaintiff alleges that Defendant has "refused or otherwise failed to repurchase" loans ****8933, ****9084, ****1087, ****8825, ****1572, ****1523, ****6785, ****7031, ****1838, ****2008, ****8875, ****4059, ****9180, ****1191, ****4961 ("Early Purchase Default Loans") as "required by the Purchase Agreement and Seller's Guide." Compl. ¶ 26.

Second, Plaintiff alleges that after the same borrower purchased loans ***8712 and ***8647, Aurora discovered that the Mortgage Loan File documentation provided by Defendant contained "misrepresented, incorrect and/or inaccurate information..." Compl. ¶ 22. Plaintiff contends that Defendant did not disclose the fact that the borrower owned another property at the time and that the property was encumbered with two mortgages. Plaintiff asserts that "the information omitted from borrower's application was material to LBB's purchase" of those

---

[2] Plaintiff moves for partial summary judgment on loans ****8933, ****9084, ****1087, ****8825, ****1572, ****1523, ****6785, ****7031, ****1838, ****2008, ****8875, ****4059, ****9180, ****1191, ****4961, ****8712, and ****8647. Plaintiff has not moved for summary judgment on loans ****8999 and ****9988, the subjects of Plaintiff's Motion to Amend to Drop Claims that the Court previously denied, and loans ****9000 and ****9547.

2

loans. Plaintiff's Statement of Undisputed Facts ¶ 73.

## II. STANDARD OF REVIEW

A motion for summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A "'genuine issue' is one that could be resolved in favor of either party, and a 'material fact' is one that has the potential of affecting the outcome of the case." Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004)(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-50 (1986)).

The moving party bears the burden of showing the Court that no genuine issues of material fact exist. National Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995). Once the moving party has made the requisite showing, the nonmoving party "may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or otherwise provided in [the] rule – set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

The Court draws all reasonable inferences in the light most favorable to the nonmoving party. Continental Casualty Co. v. Canadian Universal Ins. Co., 924 F.2d 370, 373 (1st Cir. 1991). Summary judgment will be denied, however, if "there is enough competent evidence to enable a finding favorable to the nonmoving party." Goldman v. First Nat'l Bank of Boston, 985 F.2d 1113, 1116 (1st Cir. 1993) (citing Anderson, 477 U.S. at 249).

### III. CHOICE OF LAW

Plaintiff argues that the Court should apply New York substantive law given the New York choice-of-law provision in Section 8 of the parties' Agreement. Plaintiff's Statement of Undisputed Facts ¶ 5; Exhibit A § 8 ("This Agreement and the Seller's Guide shall be construed in accordance with the laws of the State of New York...."). Where both parties select a state's law to govern a contract, and neither party challenges that selection, there is "no policy interest which would override this contractual choice." Northern Ins. Co. v. Point Judith Marina, LLC, 579 F.3d 61, 72 (1st Cir. 2009). Defendant does not dispute that New York law should apply; the Court therefore applies New York law.

### IV. DISCUSSION

Plaintiff has moved for partial summary judgment as to its breach of contract and indemnification claims. The Court addresses Plaintiff's breach of contract claim first.

A. The Governing Agreement

Before the Court can address Plaintiff's contract claim, it must resolve Defendant's contention that there is a genuine dispute regarding which agreement governs the loans at issue. Defendant alleges that there are three separate agreements: a 2004 agreement referenced in the pleadings, a 2002 agreement relied upon in the summary judgment papers, and a third agreement from 2003.

In response, Plaintiff argues that there is "no substance" to Defendant's allegation, because Plaintiff has produced the 2002 Loan Purchase Agreement. Trumpp Decl. ¶ 2, Ex. A. That agreement governs the loan transactions in dispute. As Plaintiff explains, the 2004

agreement referenced by Defendant governs bulk loan purchases, while the 2002 agreement governs the sale/purchase of individual loans. In fact, this Court notes that the 2004 agreement is, on its face, entitled "Bulk Loans." Trumpp Supp. Decl. ¶ 2, Exhibit K. Defendant has acknowledged that the loans at issue here are all individual loans. See Ponte Decl. ¶ 10. Thus, the 2004 Bulk Loan agreement does not apply to the loan transactions at the heart of this dispute.

With regard to the 2003 Loan Purchase Agreement, Defendant has not produced a copy of that agreement, nor has Defendant set forth any facts to establish that it is the governing agreement. Plaintiff asserts that the 2003 agreement was an unsigned draft that referred to the 2002 agreement. This Court, therefore, concludes that the 2002 Purchase Agreement (the "Agreement") governs the loans at issue.

B.  Breach of Contract Claim

Plaintiff will be entitled to summary judgment on its breach of contract claim if it can establish "(1) the existence of a valid contract, (2) its own performance under the contract, and (3) defendant's breach of its obligations under the contract." Morgan Guar. Trust Co. of New York v. Bay View Franchise Mortgage Acceptance Co., No. 00-Civ-8613, 2002 WL 818082, at *2 (S.D.N.Y. April 30, 2002).

Plaintiff has moved for Summary Judgment as to seventeen loans. The claims made as to these 17 loans fall into two distinct categories. First, Plaintiff argues that Defendant breached the contract by failing to repurchase Early Payment Default Loans.[3] Second, Plaintiff argues that Defendant breached the contract by refusing to repurchase loans in breach of representations,

---

[3] The Early Payment Default loans are ****8933, ****9084, ****1087, ****8825, ****1572, ****1523, ****6785, ****7031, ****1838, ****2008, ****8875, ****4059, ****9180, ****1191, ****4961.

warranties and covenants.[4] The Court will consider each of these claims and the loans affected separately.

(1) <u>Early Purchase Default Loans</u>

Plaintiff has moved for Summary Judgment as to fifteen loans, which it claims are in breach of the Early Purchase Default provision of the Agreement. An Early Payment Default Loan is defined in Section 715 of the Seller's Guide[5] as a mortgage where either the first or second monthly payment due to the Purchaser was not made within 30 days of the monthly payment's respective due date. Trumpp Decl. ¶ 3, Exhibit B § 715. In its response, Defendant addresses only nine loans – loans ****8893, ****9084, ****1087, ****1523, ****6785, ***8875, ****4059, ****9180, and ****4961. The Court will take up Plaintiff's Motion as it relates to these loans.

    a.    <u>First Payment Due Dates for Loans ****9084 and ****8875</u>

Defendant argues that there are material facts in dispute regarding when the first payment was due for loans ****9084 and ****8875. With regard to loan ***9084, Defendant disputes Plaintiff's allegation that the first payment was due to Aurora on March 1, 2007. Defendant cites correspondence dated February 13, 2007, claiming that the "first payment is due on March 1, 2007" to Defendant, and "all remaining payments should be directed to" Aurora. Brockmann Decl. ¶ 18, Exhibit Q. With regard to Loan **** 8875, Defendant disputes when the first payment was due to Aurora and when the first payment was actually made by borrower.

---

[4] The Breach of Warranty and Representation loans are ****8712 and ****8647.

[5] The Agreement incorporates by reference the terms and provisions of the Seller's Guide. Exhibit A § 2.

Defendant cites correspondence dated January 23, 2007, claiming that the first payment was due March 01, 2007 and that "all remaining payments should be directed" to Aurora. See Exhibit S.[6]

As Plaintiff argues, however, the Early Payment Default loans are controlled by the parties' Agreement. See Trumpp Decl. ¶ 2, Ex. A. The Agreement incorporates by reference the Seller's Guide, which provides that if a loan is purchased on or before the 14th day of the month, the first payment is due to Aurora on the first day of the month following the date of purchase. Trumpp Decl. ¶ 3, Exhibit B § 601.1. If a loan is purchased after the 14th day of the month, the first payment is due to Aurora on the first day of the second month following the date of purchase. Id. § 601.2

Loan ****9084 was purchased on February 13, 2007,[7] so the first payment was due March 1, 2007. It is undisputed that the first payment was not made until April 24, 2007. Trumpp Decl. ¶ 14. Aurora notified Defendant that the loan became an Early Payment Default loan and demanded repurchase of the loan in a April 16, 2007 letter. Plaintiff's Statement of Undisputed Facts, ¶¶ 22-23.

Loan ****8875 was purchased on January 23, 2007, making the first payment due on March 1, 2007. The first payment was attempted on March 28, 2007, but was dishonored by the borrower's bank for insufficient funds. Plaintiff's Statement of Undisputed Facts, ¶ 52. The first

---

[6] Defendant has attached Exhibit S to its Objection to Plaintiff's Motion. Neither Brockmann nor Ponte reference Exhibit S within their Affidavits. Plaintiff, however, does not dispute the authenticity of the Exhibit, so this Court considers the Exhibit with respect to Defendant's argument.

[7] Throughout Plaintiff's motion papers, it refers to the purchase date for Loan ****9084 as February 13, 2006. Plaintiff goes on to state that the due date for the first payment of that loan was March 1, 2007. As the Agreement requires the first payment for loans purchased before the 14th day of any month to be paid by the first day of the following month, this Court takes Plaintiff's reference to the 2006 purchase date as a typographical error. The Court will refer to the purchase date of Loan ****9084 as February 13, 2007 in the analysis that follows.

payment was not made until April 16, 2007. Id. (citing Trumpp Decl. ¶ 23). Aurora notified Defendant that the loan became an Early Payment Default loan and demanded repurchase of the loan in a May 15, 2007 letter. Id. ¶ 53 (citing Trumpp Dec. ¶ 11, Ex. E at 21-22).

Defendant did not repurchase either of these loans. On these undisputed facts, the Court concludes that Defendant is in breach of the Agreement. Plaintiff is therefore entitled to Summary Judgment on loans ****9084 and ****8875.

    b.    <u>Delegating Underwriting Authority for Loans ****1087, ****9180</u>

Loans ****1087 and ****9180 are also Early Purchase Default Loans. Of the seventeen Early Purchase Default Loans that are the subjects of Plaintiff's Motion, loans ****1087 and ****9180 are the only loans where the first payment was not more than thirty days late. Plaintiff's Statement of Undisputed Facts ¶¶ 25, 58. In both instances, however, the second payment was either more than thirty days late or not made at all. Id. Aurora notified Defendant that both loans had become Early Payment Default loans and demanded repurchase. Id. ¶¶ 27, 60. Neither loan was repurchased.

While Defendant does not dispute that the loan payments were not made in accordance with the Agreement, Defendant disputes that the loans were eligible for delegated underwriting authority. The timing of the first payment is critical to Defendant's argument because of the contractual language in the Agreement. Section 715 of the Seller's Guide, as incorporated by reference in the Agreement, reads as follow:

> For Mortgage Loans prior-approved by Purchaser..., a mortgage loan has an early payment default if the first monthly payment due [to the] Purchaser is not made within thirty (30) days of its due date.
> For Mortgage Loans delivered pursuant to *Seller's Delegated Underwriting Authority*, a

> Mortgage Loan has an early payment default if *either the first or second* monthly payment due [to] the Purchaser is not made within 30 days of each such monthly payment's respective due date.

Trumpp Decl. ¶ 3 (citing Exhibit B § 715 (emphasis added)). The Seller's Guide further states that "Delegating Underwriting Authority applies to all loans *eligible* for a delegated underwriting decision by Seller, whether or not Purchaser elects to underwrite the loan prior to Purchase." Id.

Because the first payments were made within thirty days of the due dates, Section 715 of the Seller's Guide provides that Plaintiff only suffered Early Payment Default for these two loans if they were eligible for delegated underwriting authority. Plaintiff argues that the loans were eligible for delegated underwriting authority, as supported by a September 23, 2005 correspondence entitled "Authorization Granted for Delegated Underwriting Authority." Trumpp Decl. ¶ 12; Exhibit G. The letter authorizes Plaintiff to utilize delegated underwriting authority, but states that such authorization does not extend to (1) loans that do not conform to Aurora Loan Service guidelines unless a Loan Parameter Exception Request was approved; (2) transactions with an amount greater than $1 million; and (3) Credit Solutions/ Expanded Options loans. Id. (citing Exhibit G).

Defendant essentially argues that Plaintiff failed to establish that these two loans did not fall within the three categories of loans to which Defendant's grant of eligible delegating underwriting authority did not extend. See Ponte Decl. ¶¶ 12, 13. This Court disagrees. Defendant admits that the two loan amounts were less than $1 million. See Def. Statement of Disputed Facts ¶¶ 26, 59 ("Though this loan was in fact under $1 million..."). In addition, Plaintiff submitted a supplemental declaration establishing that the loans satisfied the Aurora Loan Services' guidelines for their respective programs and were not originated under the

"Expanded Options" program. Trumpp. Supp. Decl. ¶ 10.

The Court concludes that Plaintiff was eligible for delegated underwriting authority on loans ****1087 and ****9180. Plaintiff therefore suffered Early Payment Default when the second payments were not made within thirty days of the due dates. Accordingly, Plaintiff is entitled to Summary Judgment on these two loans.

### c. Defendant's Failure to Address Plaintiff's Motion with respect to Six Loans

Although Plaintiff alleges that Defendant does not dispute any of the facts pertaining to seven of the Early Purchase Default Loans at issue, the Court finds that Defendant did not raise specific disputes as to six of those loans – loans ****8825, ****1572, ****7031, ****1838, ****2008, and ****1191.[8] District of Rhode Island Local Rule 56(a)(3) requires that "[f]or purposes of a motion for summary judgment, any fact alleged in the movant's Statement of Undisputed Facts shall be deemed admitted unless expressly denied or otherwise controverted by a party objecting to the motion." Where a party neglects to deny such facts, as here, those facts are deemed admitted. CMI Capital Mkt. Inv., LLC v. Gonzalez-Toro, 520 F.3d 58, 61 (1st Cir. 2008).

The Court adopts Plaintiff's factual allegations for those six loans. For the loans purchased on or before the 14th day of the month, the first payment due to Aurora was either not received within thirty days of the first day of the month following the date of purchase, or was dishonored by the borrower's bank for insufficient funds. As to the loans purchased after the

---

[8] While Plaintiff alleges that Defendant failed to dispute facts regarding Loan ****1087, Defendant's Statement of Disputed Facts disputes that Loan ****1087 was eligible for delegated underwriting authority. Def. Statement of Disputed Facts ¶ 26. The Court does not, therefore, automatically grant summary judgment to Plaintiff on Loan ****1087.

fourteenth day of the month, the first payment was not received on or before the first day of the second month following the date of purchase. When the first payment was not received on each of the six loans, Aurora notified Defendant by letter that the loan had become an Early Purchase Default Loan and demanded repurchase. No further payments were made and Defendant has not yet repurchased any of loans.

Having reviewed the contract provisions that apply to these transactions, the Court finds that Defendant has breached its obligation to repurchase these six loans. Accordingly, Plaintiff is entitled to Summary Judgment on these loans.

    d.    <u>Plaintiff's Standing as to Five Loans</u>

Defendant argues that Plaintiff lacks standing to bring this action with respect to loans ****8933, ****1523, ****6785, ****4059, and ****4961. These loans are all Early Purchase Default Loans. The first payments were either never made, made over thirty dates late, or were dishonored for lack of sufficient funds. Aurora notified Defendant that the loans became Early Purchase Default loans and demanded repurchase. Defendant never satisfied its obligation to repurchase the loans.

As a last ditch effort to avoid its obligation to repurchase these five loans, Defendant argues that Plaintiff does not have enforceable rights to collect on these loans, because after these loans were sold by Defendant to LBB, LBB sold these loans to third parties. Defendant contends that because Plaintiff has not provided documentation of these sales, there is no evidence as to whether LBB's rights and remedies were sold, transferred or retained by LBB.

In response, Plaintiff has submitted a supplemental declaration explaining that Plaintiff

11

currently owns both the loans and the rights to sue Dream House on the Loans. Trumpp Supp. Decl. ¶ 4. While Plaintiff admits that several loans were sold to other parties such as SASCO, SARM or LXS, they were repurchased from those trusts by Plaintiff. Plaintiff contends that only the loans, not the rights to the Loan Purchase Agreement with Defendant were transferred to the trusts.

The Court finds that Plaintiff's supplemental filings rebut Defendant's claim that Plaintiff lacks standing to seek redress for breach of contract on these Early Purchase Default loans. Because there are no material facts in dispute, Plaintiff is entitled to Summary Judgment on those five loans.

(2) <u>Breach of Representation and Warranties Loans</u>

Plaintiff has moved for Summary Judgment as to loans ****8712 and ****8647, which it claims are in breach of the representation and warranty provisions of the Agreement. Loans ****8712 and ****8647 were made to the same borrower. Plaintiff alleges that Defendant failed to disclose that the borrower owned another property at the time and that that property was encumbered with outstanding mortgages. Plaintiff's Undisputed Facts ¶¶ 72, 73, 77, 78. Plaintiff further argues that Plaintiff has a right to demand repurchase of the two loans because Defendant breached the Agreement when it failed to make that disclosure.

Plaintiff's right to demand repurchase of these two loans is supported by the contractual language. The Agreement incorporates by reference the terms and provisions of the Seller's Guide. Trumpp. Decl. ¶¶ 2-3; Exhibit A, § 2. Section 703.1 of the Seller's Guide provides that Defendant represented, warranted and covenanted that for the loans sold to Plaintiff –

> No document, report or material furnished to Purchaser in any Mortgage Loan File or related to any Mortgage Loan (including, without limitation, the Mortgagor's application for the Mortgage Loan executed by the Mortgagor), was falsified or contains any untrue statement of fact or omits to state a fact necessary to make the statements contained therein not misleading.

Trumpp. Decl. ¶ 3; Exhibit B § 703.1. Section 710 of the Seller's Guide provides that

> in the event of a breach of any of the representations, warranties or covenants contained in Section 700 through 710 herein, which breach materially and adversely affects the value of the Mortgage Loans or the Interest of Purchaser, or materially and adversely affects the interests of Purchaser in the related Mortgage Loan... Seller shall, at Purchaser's option, repurchase the related Mortgage Loan...

Exhibit B § 710.

Plaintiff argues that Defendant breached the Agreement when it failed to disclose that the borrower owned another property encumbered by two outstanding mortgages, because Defendant warranted that the borrower's application did not "omit[] to state a fact necessary to make the statements contained therein not misleading." Exhibit B § 703.1. In response, Defendant argues that it did not breach the warranty and representation provision of the Agreement because Plaintiff had full knowledge of the two mortgages. Brockmann Decl. ¶ 17, Exhibit P. To support this contention, Defendant provides correspondence dated July 21, 2006 from Aurora to Defendant, entitled "Purchase Suspense Documentation." Id. The letter states that Plaintiff is "holding the purchase package in suspense," in part because the "credit report obtained by Aurora indicate[d that] borrower has 3 new mortgage accounts not reflected on REO..." Id.

Although Plaintiff has provided copies of the two Residential Loan Applications that are deplete of any disclosure of the borrower's outstanding mortgages, those applications are dated May 25, 2006, nearly two months prior to the July 21, 2006 "Purchase Suspense

Documentation." See Supp. Trumpp Decl. ¶ 6; Exhibits H, I. Plaintiff has not explained the July 21, 2006 correspondence and how it relates to those Residential Loan Applications. This Court therefore finds that a factual dispute remains as to whether Plaintiff did in fact have knowledge of the borrower's two outstanding mortgages. Accordingly, Plaintiff's Motion for Partial Summary Judgment on loans ****8712 and ****8647 is denied.

C.     Indemnification Claim

In addition to the breach of contract claim, Plaintiff has moved for Summary Judgment on its indemnification claim. Plaintiff asserts that Defendant is liable under Section 711 of the Seller's Guide to indemnify Plaintiff. Section 711 of the Seller's Guide, as incorporated by reference by the Agreement, contains the following indemnification provision –

> In addition to any repurchase and cure obligations of Seller, ... Seller shall indemnify Purchaser and Purchaser's designee... from and hold them harmless against all claims, losses, damages, penalties, fines, claims, forfeitures, lawsuits, court costs, reasonable attorney's fees, judgments and any other costs, fees and expenses that the Purchaser may sustain in any way related to or resulting from any act or failure to act or any breach of any warranty, obligation, representation or covenant contained in or made pursuant to this Seller's Guide or the Loan Purchase Agreement by any agent, employee, representative or officer of Seller or Seller's correspondent.

Trumpp Decl. 2, Exhibit B § 711.

Although Plaintiff has established that the Agreement provides indemnification as a form of relief, Plaintiff has not established why indemnification is necessary as to any of the seventeen loans at issue. Plaintiff broadly asserts that where repurchase is not an option, for example, where Plaintiff has been forced to liquidate the loan, Defendant must nonetheless remain liable by indemnifying Plaintiff for all losses and damages incurred. Plaintiff has not, however, sufficiently developed facts that would give rise to an indemnification claim. Accordingly,

Plaintiff's Motion for Partial Summary Judgment on its indemnification claim is denied.

## V.   CONCLUSION

For the reasons detailed above, this Court finds that Plaintiff is entitled to judgment as a matter of law on its breach of contract claim on the Early Purchase Default Loans ****8933, ****9084, ****1087, ****8825, ****1572, ****1523, ****6785, ****7031, ****1838, ****2008, ****8875, ****4059, ****9180, ****1191, and ****4961. The Court finds that Plaintiff is not entitled to judgment as a matter of law on the breach of representations, warranties and covenants loans ****8712, and ****8647. Finally, the Court finds that Plaintiff is not entitled to judgment as a matter of law on Plaintiff's indemnification claim.

SO ORDERED.

*Mary M. Lisi*
Mary M. Lisi
Chief United States District Judge
February 25, 2010